NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1008-24

JUAN MARTINEZ,

      Plaintiff-Respondent,

v.

T. SLACK ENVIRONMENTAL
SERVICES, INC. and
THEODORE SLACK,

      Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 29, 2026**
>
> **APPELLATE DIVISION**

Argued March 17, 2026 – Decided June 29, 2026

Before Judges Marcyk, Bishop-Thompson and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1335-20.

Aaron L. Peskin argued the cause for appellants (Kang Haggerty LLC, attorneys; Ralph P. Ferrara and Aaron L. Peskin, on the briefs).

David Tykulsker argued the cause for respondent (David Tykulsker & Associates, attorneys; David Tykulsker, on the brief).

Ryan P. McCarthy argued the cause for amicus curiae National Employment Lawyers Association-New Jersey (Goodley McCarthy LLC, attorneys; Ryan P. McCarthy, on the brief).

The opinion of the court was delivered by

BISHOP-THOMPSON, J.A.D.

In this wage and hour dispute, we address two important issues. First, whether a representative action brought pursuant to the Wage and Hour Law (WHL), N.J.S.A. 34:11-56a to -56a43, and the Prevailing Wage Act (PWA), N.J.S.A. 34:11-56.25 to -56.47, is distinct from a class action pursuant to Rule 4:32-1. Second, we consider the appropriate statute of limitations applicable to companion wage claims.

Defendants Theodore Slack and T. Slack Environmental Services, Inc. (T. Slack) appeal from the December 6, 2024 Law Division interlocutory order, which granted plaintiff Juan Martinez's motion to certify this matter as a representative action under the WHL and the PWA. Martinez was also designated as the representative of defendants' current and former employees. On appeal, defendants contend the motion court erred in determining: (1) the WHL allows for a representative action independent of Rule 4:32-1; (2) Martinez justified class treatment despite the failure to provide evidence of other similarly situated employees; and (3) even if the representative class was justified, the court improperly applied a six-year look-back period. We granted the National Employment Lawyers Association-New Jersey (NELA-NJ) leave to appear as amicus curiae.

A-1008-24

We affirm in part and reverse in part.  Consistent with our holding in Cano v. County Concrete Corp., 483 N.J. Super. 459 (App. Div. 2026), we conclude the statutory language of both the WHL and PWA is independent of Rule 4:32-1 and therefore does not require class certification.  We further conclude the motion court properly considered the parties' submissions and correctly determined the proposed class of hourly employees was similarly situated to other employees of T. Slack.

However, we reverse the portion of the order establishing a six-year look-back period for claims under the WHL and, by incorporation, the Earned Sick Leave Law (ESLL), N.J.S.A. 34:11D-1 to -13.  The court mistakenly applied a six-year look-back to the WHL claim, when a two-year statute of limitations period applies.  In contrast, the six-year statute of limitations period was properly applied to the PWA claim, which is a breach of contract claim.

## I.

Theodore Slack is the president and principal officer of T. Slack, a small, non-union contractor with its principal place of business in New Jersey. While the majority of T. Slack's projects were public works, it also undertook private jobs.

From 2006 to 2019, Martinez was employed by T. Slack as an hourly laborer, paid at the "D" laborer prevailing rate. According to Martinez, during this period, T. Slack employed between six and ten hourly laborers, all of whom were subjected to the same pay practices.

While performing public work for defendants, Martinez carried out a variety of tasks classified as "B" and "C" laborer functions and should have been paid the appropriate prevailing wage rate under the PWA.[1] However, he was paid at a lower hourly rate when working on private projects.

---

[1] The New Jersey Department of Labor and Workforce Development issues the prevailing wage rate determination. The comments/notes section of the wage rate for the Heavy & General Laborers – North set forth the following classifications:

> "D" Rate:
> basic, landscape, asphalt, slurry seal, or railroad track laborer; utility meter installer; flagman; salamander tender; pitman; dumpman; rakers or tampers on cold patch work; wrappers or coaters of pipe; waterproofer; timberman; wagon drill or drill master helper; powder carrier; magazine tender; signal man; power buggy operator; tree cutter; operator of basic power tools[.]
>
>     . . . .
>
> "C" Rate:
> pipe layer; laser man; conduit or duct line layer; operator of jack hammer, chipping hammer, pavement breaker, concrete cutter, asphalt cutter, sheet hammer, or walk-behind saw cutter; sandblaster; acetylene cutting or burning; wagon

Martinez also alleges defendants failed to pay him a properly calculated blended overtime rate, as required by N.J.S.A. 34:11-56a25 of the WHL and N.J.S.A. 34:11-56.40 of the PWA, in two specific situations. During weeks in which Martinez performed both public and private work, he was paid at the lower, private rate rather than a blended rate reflecting both types of work. And in other weeks, when he performed work under different titles—such as laborer and ironworker—within the same week, he was paid overtime at the lower laborer rate instead of the weighted average rate based on both titles.

Martinez further claims he worked "off-the-clock" hours, including driving equipment to and from the worksite and defendants' Kenilworth

_____

drill, directional drill, or hydraulic drill operator; drill master; core driller; asphalt raker or lute man[.]

. . . .

"B" Rate:
concrete finisher; setter of brick or stone pavers; stone cutter; form setter; manhole, catch basin, or inlet builder; asphalt screedman; rammer; hardscaping; gunite nozzle man[.]

[Dep't of Labor & Workforce Dev., Prevailing Wage Rate Determination (July 3, 2024), https://lwdwebpt.dol.nj.us/archivewages/185095718-statewide-7-3-24.pdf.]

A-1008-24

facility, loading and unloading his truck, and traveling to and from the worksite. He argues these activities constitute compensable work time under both the PWA and the WHL. In addition, Martinez asserts earned sick leave was likewise calculated using the lower private wage rate, rather than a blended rate reflecting both public and private rates, during weeks in which he and other laborers worked more than forty hours.

In February 2020, Martinez initiated a lawsuit alleging violations of the PWA, WHL, and ESLL, both individually and on behalf of similarly situated hourly employees. Martinez claimed defendants failed to pay overtime wages at the blended rate for work performed on both public and private projects, failed to pay the required wages, and did not compensate him for his "off-the-clock" work. He also alleged defendants violated the ESLL by failing to pay proper sick leave wages. Martinez sought compensatory and liquidated damages, and other statutory relief for himself and other similarly situated employees.

Discovery was conducted under the supervision of a special adjudicator. During this process, defendants provided Martinez with the names and contact information for their hourly employees, all of whom resided in or near New Jersey. Following the special adjudicator's instructions, in September 2024, Martinez moved to certify a statutory representative action under the WHL and

6

PWA, seeking to be designated as a representative for both current and former employees.

Defendants opposed the motion on several grounds. First, they argued Martinez had not satisfied the class action requirements set forth in Rule 4:32-1, and a representative action was not permissible outside of this Rule. Second, they contended the "putative class" was not sufficiently numerous, as defendants employed no more than fifteen putative class members, representing all employees, between 2018 and 2020. Third, defendants asserted Martinez was not an adequate class representative. Finally, they argued the presence of individualized questions and the need for individualized damage calculations precluded both representative and class treatment of the claims.

After hearing argument, the motion court rendered an oral decision. It explained the matter qualified as a representative action, as permitted under both the WHL and the PWA. The court further stated it was satisfied the pleadings sufficiently alleged facts under those statutes. Accordingly, the court certified the matter as a representative action and designated Martinez as the representative. The court also designated a "six-year look[-]back period" for overtime claims, from February 28, 2014, to February 28, 2020.

A-1008-24

The court directed defendants to provide Martinez with the current or last-known mailing address and other contact information for the representative employees within fifteen days of the order. It further directed the parties' counsel to meet and confer concerning the contents of a notice to be sent to those employees. If the parties could not agree on the notice's contents, they were instructed to notify the court and submit the agreed-upon provisions. The court would then resolve any remaining disagreements and approve the final form of the notice. Once approved, the notice would be mailed to the represented employees.

Defendants reprise the arguments presented before the motion court. They argue it erred in determining the WHL permits a representative action independent of <u>Rule</u> 4:32-1. Also, the court improperly found Martinez justified class treatment, despite his failure to present evidence of other similarly situated employees. Finally, defendants assert, even if a representative class was warranted, the court misapplied a six-year look-back period. In support of this argument, they cite to <u>Maia v. IEW Construction Group</u>, 257 N.J. 330 (2024), which held amendments to the WHL extending the statute of limitations from two years to six years, should be applied prospectively, not retrospectively.

II.

A-1008-24

We must first determine whether this appeal is properly before us absent a motion for leave to appeal. Defendants rely on Rule 2:2-3(b)(9), which provides for an appeal as of right from orders entered pursuant to Rule 4:32. However, this reliance is misplaced because the representative action order does not implicate Rule 2:2-3.

In addition, the order under review is not appealable as of right under Rule 2:2-3(a)(1), as it is interlocutory in nature and may only be reviewed upon leave granted under Rule 2:2-4. "[O]ur general policy . . . favor[s] . . . 'restrained appellate review of issues relating to matters still before the trial court' to avoid piecemeal litigation." Harris v. City of Newark, 250 N.J. 294, 312 (2022) (quoting Moon v. Warren Haven Nursing Home, 182 N.J. 507, 510 (2005)). Nevertheless, in the interest of prompt resolution and in light of the important public policy considerations regarding wage rates in employment, we deem defendants' notice of appeal as a motion for leave to appeal from the interlocutory order, and we grant the motion as timely. See R. 2:4-4(b)(2); see also N.J. Mfrs. Ins. Co. v. Prestige Health Grp., LLC, 406 N.J. Super. 354, 358-59 (App. Div. 2009).

### III.

Two statutes are central to this appeal; accordingly, questions of statutory interpretation are reviewed de novo. Lopez v. Marmic LLC, 263 N.J.

225, 240 (2026). "The primary goal of statutory analysis is to understand and implement the Legislature's intent." State, Div. of State Police v. N.J. State Trooper Captains Ass'n, 441 N.J. Super. 55, 62 (App. Div. 2015). We must look first to the "statute's actual language and ascribe to its words their ordinary meaning." Kean Fed'n of Tchrs. v. Morell, 233 N.J. 566, 583 (2018). By doing so, we read each statutory provision "in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., 192 N.J. 189, 195 (2007).

However, "[w]e do not view words and phrases in isolation but rather in their proper context and in relationship to other parts of a statute, so that meaning can be given to the whole of an enactment." N.J. State Trooper Captains Ass'n, 441 N.J. Super. at 63. "[W]hen construing a statute, [the court] presume[s] that the Legislature created a logical scheme that avoids contradictions." Ibid.

Unless an issue goes to the jurisdiction of the trial court or concerns matters of substantial public interest, we will ordinarily not consider it. Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). However, we review issues

10

of "great public interest," and the issue here pertains to similarly situated employees in a representative wage action in the context of public works projects. This issue implicates public policy regarding the protection of wage rates for workers employed on public works projects, ensuring statutory wage protections are properly enforced and applied to all eligible employees. While defendants did not brief the PWA claim, we consider this claim because the contract wage claim is inextricably linked with the companion WHL and ESLL claims.

The WHL was enacted to "protect employees from unfair wages and excessive hours." Hargrove v. Sleepy's, LLC, 220 N.J. 289, 304 (2015) (quoting In re Raymour & Flanigan Furniture, 405 N.J. Super. 367, 376 (App. Div. 2009)). Its declared purpose is "to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them . . . from . . . serious and unfair competition resulting from wage levels detrimental to their health, efficiency, and well-being." N.J.S.A. 34:11-56a. These statutes are modeled on, and are substantially similar to, the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and our courts look to the FLSA regulations for guidance. Marx v. Friendly Ice Cream Corp., 380 N.J. Super. 302, 309 (App. Div. 2005).

The PWA is designed to establish minimum wage levels for workers engaged in public works projects within New Jersey. Like the WHL, the public policy is "to safeguard the[] efficiency and general well[-]being and to protect [workers] . . . from . . . unfair competition resulting from wage levels detrimental to efficiency and [their] well-being." N.J.S.A. 34:11-56.25. New Jersey's county-specific prevailing wage rates are based on, and mirror, federal prevailing wage rates, as determined by the United States Department of Labor under the Service Contract Act of 1965, 41 U.S.C. §§ 6701-6707.

Defendants argue the representative action under the WHL must be certified in a manner similar to a class action and, therefore, is not independent of Rule 4:32-1. They contend the "similarly situated" standard does not satisfy the procedural requirements necessary to establish a class action. In support of their position, defendants point out while the WHL is similar to the FLSA and provides guidance, the FLSA specifically requires employees who wish to participate in a collective action to provide written consent, which must be filed with the court where the action is brought. 29 U.S.C. § 216. They argue the Portal-to-Portal Act (PTPA) amended the FLSA, which aimed to prohibit representative actions. This amendment was intended to address excessive litigation by plaintiffs who did not have a personal interest in the outcome. See Portal-to-Portal Act of 1947, ch. 52, §§ 5(a), 6-7, 61 Stat. 87-88 (codified

12

as amended at 29 U.S.C. §§ 255(a), 251-262).  As a result, a worker must affirmatively "opt-in" to become a member of a class or collective action.

NELA-NJ joins with Martinez and argues the Legislature intended for the remedial policy of the WHL to provide for a separate and distinct representative action from Rule 4:32-1 upon its enactment in 1966.  It contends the plain language—"similarly situated"—of the WHL is substantially similar to the FLSA.  Moreover, the Legislature expressly excluded language similar to the PTPA.

Recently, in Cano, we held the named plaintiffs could pursue claims on behalf of similarly situated employees by incorporating violations and remedies under the WHL, N.J.S.A. 34:11-56a25, through the violations and remedies provided by the ESLL, N.J.S.A. 34:11D-5.  483 N.J. Super. at 481. We further concluded "neither the language at N.J.S.A. 34:11D-5 [of the ESLL], nor N.J.S.A. 34:11-56a25 [of the WHL] specifically requires class certification or collective action procedures, the latter of which are typically brought in federal wage claims." Id. at 482.

In Cano, the defendant appealed from the denial of its motion in limine to preclude the admission of documents, evidence, testimony, or argument related to similarly situated employees.  Id. at 478.  The named plaintiffs, union hourly drivers, filed a complaint alleging ESLL violations on behalf of

13

themselves and other similarly situated employees after their collective bargaining agreement expired. <u>Id.</u> at 467-68. During discovery, plaintiffs obtained payroll records, personnel policies, and communications regarding leave for all worksites. <u>Id.</u> at 468. We affirmed the denial of defendant's motion and concluded the unnamed plaintiffs had sufficient standing to assert ESLL claims and were not required to certify a class at the pre-trial stage. <u>Id.</u> at 481, 487.

Following <u>Cano</u>, the parties here submitted supplemental briefs in accordance with <u>Rule</u> 2:6-2(b). Both Martinez and the NELA-NJ contend <u>Cano</u> "provides strong additional bases to affirm" the motion court's ruling.

In contrast, defendants argue <u>Cano</u> is not binding authority, citing <u>Brundage v. Estate of Carambio</u>, 195 N.J. 575, 593 (2008), and therefore, we are not obligated to follow its holding. They contend the motion court improperly created a procedural mechanism for unnamed representative members "on the fly after trial," due to the absence of guidance in either the Rules of Court or the ESLL, and in the absence of any precedent. Nonetheless, even if we were to adopt the reasoning in <u>Cano</u>, its holding would render the order moot, as class certification would not have been necessary. Accordingly, defendants urge us to reverse the order and remand with instructions to follow the procedures outlined in <u>Cano</u>.

14

We reject defendants' contentions. The remedial nature of the PWA permits any worker "to maintain such action for and on behalf of [them]self or other work[ers] similarly situated, and such work[er] and work[ers] may designate an agent or representative to maintain such action for and on behalf of all work[ers] similarly situated." N.J.S.A. 34:11-56.40. This statute addresses the similar concerns of the WHL and the ESLL and should resolve the similar issue, such as the unequal wage rates of those seeking the protection of the three statutes, by the same standard. See Hargrove, 220 N.J. at 313.

We are unpersuaded by defendants' contention Martinez was required to present evidence of other similarly situated employees in order for the matter to qualify as a representative action. They argue we should be guided by the FLSA standards: the opt-in process for conditional certification and Martinez's obligation to satisfy the burden of demonstrating the other employees are similarly situated for final certification.

As in Cano, Martinez's complaint put defendants on notice regarding the existence of similarly situated employees. The plain language of the PWA and WHL is the "best indicator" of the legislative intent. See Finkelman v. Nat'l Football League, 236 N.J. 280, 289 (2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). Neither statute contains language comparable to the

FLSA banning representative actions. Indeed, our Legislature was aware the PTPA amended the FLSA because the WHL was adopted in 1966. Hargrove, 220 N.J. at 313.

Additionally, these statutes do not mandate Martinez, as the named plaintiff, to identify the similarly situated employees to defendants. See Cano, 483 N.J. Super. at 482. Further, defendants were already aware of the approximately fifteen employees, as their names and other contact information had previously been provided to Martinez. Defendants' argument the putative class lacked numerosity is equally unpersuasive, and in light of our holding in Cano, we need not address this argument.

We see no reason to depart from Cano's holding that a representative action under the WHL and PWA does not require class certification under Rule 4:32-1. Accordingly, there is no basis to treat the three statutes differently; rather, they should be applied in tandem.

We reject defendants' argument, under our reasoning in Cano, the order under review would be rendered moot by making class certification unnecessary. Courts will not reverse based on technical errors unless there is a showing of actual prejudice or an effect on the outcome. State v. Cotto, 471 N.J. Super. 489, 537 (App. Div. 2022); R. 2:10-2. Both the technical and typographical error of class certification on the order does not alter the

16

statutory requirements of the WHL and PWA.  Martinez is permitted to be designated as a representative; and the matter is permitted to proceed as a representative action.  We therefore conclude the order under review was not rendered moot by our holding in Cano.

IV.

Defendants argue for the first time on appeal a two-year statute of limitations applies to wage violations under the WHL.  Moreover, the motion court misapplied N.J.S.A. 34:11-56a25.1 and should have applied the two-year look-back rule established in Maia, 257 N.J. at 347.  See Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 116 (2007) (classifying the WHL's previous two-year "look-back" provision as a statute of limitations).  They acknowledge the Legislature amended the WHL, effective August 6, 2019, to add a six-year look-back provision under N.J.S.A. 34:11-56a25.1.  The provision reads:  "No claim for unpaid minimum wages[ or] unpaid overtime . . . shall be valid with respect to any such claim which has arisen more than six years prior to the commencement of an action for the recovery thereof."  It further reads:  "In determining when an action is commenced, the action shall be considered to be commenced on the date . . . where a cause of action is commenced in a court of appropriate jurisdiction."  Ibid.

17

In Maia, our Supreme Court held the "[WHL] is to be applied prospectively to conduct that occurred on or after August 6, 2019[—]Chapter 212's effective date[—]not retroactively to conduct that occurred before the effective date."  257 N.J. at 351.  The Court explained "the Legislature expressly stated in Section 14 of Chapter 212 that the new provisions 'shall take effect immediately.' L. 2019, c. 212 § 14." Id. at 352.

Here, the court established a "six-year look[-]back period" for overtime claims from February 28, 2014, to February 28, 2020.  Given the Legislature's explicit intent, we conclude the motion court mistakenly applied a six-year statute of limitations period for the WHL and, by incorporation, the ESLL claims.  We therefore reverse that portion of the order.

On the other hand, Martinez's claim for additional wages based on defendants' alleged violation of the PWA is a claim for breach of contract.  As noted, the overarching policy of the PWA is to protect employees on public works projects and requires the inclusion of the prevailing wage rate in all contracts for public work.  N.J.S.A. 34:11-56.27.  Under N.J.S.A. 34:11-56.40, a worker may recover "the full amount of [the] prevailing wage."  However, that provision does not specify a look-back period or statute of limitations for civil actions.  In the absence of such limitations, courts apply the general limitations provision governing that category of claims.  Troise v. Extel

18                                                    A-1008-24

Commc'ns, Inc., 345 N.J. Super. 231, 236 (App. Div. 2001). Consequently, statutory claims under the PWA are comparable to a claim for "breach of contract or other economic harm" such that they should be "subject to the six-year limitations period provided by N.J.S.A. 2A:14-1 for breach of contract." Id. at 237-38.

Guided by these principles, we are satisfied the court properly determined the six-year look-back provision for the PWA claims of Martinez and the other similarly situated employees. Accordingly, we affirm this portion of the order.

To the extent we have not addressed any of defendants' remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division